ROBERTS, C.J.
This appeal follows a juvenile delinquency petition charging the appellant, M.T.A., with second-degree felony arson after a shed behind his residence caught fire on December 13, 2014. After an adjudicatory hearing, the appellant was found guilty and sentenced to a term of juvenile probation. The appellant appeals, arguing the trial court erred in denying his motion for judgment of- dismissal. We agree and reverse because the State failed to establish a prima facie case of arson.
On December 13, 2014, the appellant, who was 11 years old, was living with his father in a mobile home on a rented lot in a trailer park. The appellant’s father owned the mobile home along with the shed on the property that sustained fire damage. The appellant’s father left him at home in the care of an older friend. The appellant became bored and went outside alone to explore a junk pile in his yard. He located a blow torch and became curious, behavior not uncommon in an 11-year-old boy. He began lighting items on fire and quickly extinguishing them. The appellant spotted an oscillating fan in the junk pile and decided to set it afire using the blow torch and an aerosol can of lubricant that he found. The appellant testified that the fan was “not that close” to the shed, and all the testimony showed that the fan was not inside or directly touching the shed. The fan caught fire, and the fire quickly got out of control. The fire spread to the grass, and the appellant ran to get his friend to help extinguish it. The appellant testified that, at the time he ran for help, the shed had not yet caught fire. By the time the appellant and his friend returned, the fire had spread to the shed. Their attempts to extinguish the fire were unsuccessful, and the appellant ran across the street to call 911.
When he initially spoke to the Fire Marshall dispatched to investigate the case, the appellant lied about setting the fan on fire. The State makes much of this initial dishonesty, implying an admission of guilt. We believe this dishonesty could equally be viewed as normal behavior of a scared 11-year-old child and do not find it compelling. The appellant did eventually tell the Fire Marshall the truth. The Fire Marshall testified that his investigations regarding the burn patterns and location of the fan were consistent with the appellant’s story. The Fire Marshall agreed that the fire did not start in the shed, but rather started on the grass and spread to the shed.
Defense counsel moved for a judgement of dismissal at the close of the State’s case and again at the close of the evidence. Defense counsel argued that the State had failed to prove the willfulness and unlawfulness of the act and had failed to rebut the appellant’s reasonable hypothesis of innocence that the fire started accidentally. The trial court denied the motions as well as a subsequent motion for rehearing.
The grant of a motion for judgment of dismissal is required only if “ ‘the evidence is insufficient to establish a pri-ma facie case of guilt against the child.’ ” *691 C.B.B. v. State, 135 So.3d 1139, 1141 (Fla. 1st DCA 2014) (citing Fla. R. Juv. P. 8.110(k)). We apply the same standard of review to a motion for judgment of dismissal in a juvenile case as we do a motion for judgment of acquittal in a criminal ease. ■ C.B.B., 135 So.3d at 1141 (citations omitted). We review the denial of the motion de novo, with the evidence viewed in the light most favorable to the State. Id.
Section 806.01(2), Florida Statutes (2014) provides:
' Any person who willfully and unlawfully, or while in the commission of any felony, by fire or explosion, damages or causes to be damaged any structure, whether the property of himself or herself or another, under any circumstances not referred to in subsection (1), is guilty of arson in the second degree, which constitutes a felony of the second degree[.]
The appellant argues that the State failed to prove that he willfully and unlawfully set the fire that caused the damage to the shed. He argues any proof of intent was circumstantial; therefore, the State failed to rebut his hypothesis of innocence that the shed burned accidentally. The State responds that arson is a general intent crime, and, as such, the State-only had to prove that the appellant intentionally set fire to the shed or did an act that was substantially certain to result in setting fire to the shed.
The intent element of arson has evolved over time. In 1979, section 806.01 was amended to remove malice -from the ■ statute. See Ch. 79-108, § 1, Laws of Fla. (1979) (replacing “willfully and maliciously” with “willfully and unlawfully”)- The Legislature substituted the word “unlawfully” for the word “maliciously” in order to alleviate the perceived difficulty of proving malice or evil intent in order to obtain an arson conviction. See Lofton v. State, 416 So.2d 522, 523 (Fla. 4th DCA 1982), rev. denied, 429 So.2d 6 (Fla.1983), cert. denied, DeAndrea v. Fla., 464 U.S. 843, 104 S.Ct. 142, 78 L.Ed.2d 134 (1983). After the amendment, the State no longer needed to prove evil intent on the part of the perpetrator, but still must show that a willful -act was done unlawfully, -meaning without a legitimate, lawful purpose. See id. See also Berry v. State, 566 So.2d 22, 24 (Fla. 1st DCA 1990), rev. denied 576 So.2d 284 (Fla.1991) (finding the State satisfied the unlawfulness element by- presenting evidence that the appellant intentionally burned his home for the purpose of collecting the fire insurance proceeds). Even if the State arguably met its burden of proving the fire was willfully started using the appellant’s admission, it made no attempt to show that the fire was started unlawfully, i.e., without a legitimate, lawful purpose. While setting a fan on fire out of 'curiosity could hardly be construed as a legitimate purpose, the State made no effort to show that the action was unlawful and, in failing to do so, essentially rewrote the arson statute to remove the element of unlawfulness. Under the State’s position, proof of arson would be satisfied by a defendant’s admission to starting a fire and proof of property damage in the vicinity. , We find- this argument lacking. The State’s brief.sets forth the evolution of the general -intent crime of arson and argues that the appellants subjective intent to damage the shed is immaterial to proving the crime of arson. We agree with the general principles in the eases relied on by the State, but find the State’s interpretation of the cases overlooks some of the factual subtleties that ultimately render those cases distinguishable.
The State cites Linehan v. State, 442 So.2d 244, 245 (Fla. 2d DCA 1983), in which the Second District provided a detailed analysis of whether voluntary intoxication was a defense to arson in section 806.01(1), Florida Statutes (1981). The *692 Second District recognized that voluntary-intoxication was a defense to a “specific intent” crime, but was not a defense to arson because arson was a general intent crime. Id. at 246. The use of-the term “willfully” in the-general intent arson statute, without more, simply indicated That the person -must have intended to do the act and served “to distinguish that conduct from accidental (noncriminal) behavior or strict’ liability crimes.”- Id. at 247. The court stated, “A ‘general intent’ statute is one that prohibits either a specific voluntary act or something that is substantially certain to result from the act (e.g., damage to a building is the natural result of the act of setting a building afire).” Id.
We agree with the analysis in Linehan that “[a] person’s subjective intent to cause the particular result is irrelevant” to the general intent crime of arson. Id. at 247. However, the facts of that case showed Linehan admitted to entering his- girlfriend’s apartment through a - window, holding a lighter flame to her curtains, and then leaving. Id. at 246. The resulting fire engulfed the apartment building, killing one of the occupants. Id. The question before the Second District was whether Linehan’s defense of voluntary- intoxication applied. In other words, the analysis of the court was focused on the willfulness not the unlawfulness of Lineharis actions. While not specifically discussed, the unlawfulness of Linehan’s actions seems to have been presumed by Linehan setting fire to the structure itself, ■ •
Several years later, the Second District reiterated that arson was a general intent Crime in another case relied on by the State, Knighten v. State, 568 So.2d 1001, 1002 (Fla. 2d DCA 1990). Knighten, who appeared to have become enraged while incarcerated in the “drunk tank” of the municipal jail, set fire to his shirt and hung it on a wire descending from the ceiling, causing minor fire damage to the interior of the cell. Id. Knighten admitted to intentionally starting -the fire, but claimed it was only an-attention-getting device. Id. The Second. District rejected Knighten’s argument that the-.State failed to prove he intended to1 damage.the structure, stating that arson was a general intent crime and “[a]lT that needed to be shown uias that Knighten intentionally started ' the ■ fire.” Id. (citing Linehan, 442 So.2d at 244). Knighten is a logical application of Lme-han because it also- concerned whether the fire was willfully started. As with Line-han,- the unlawfulness of Knighten’s actions were not at issue and can be presumed by his admission to setting fire to the structure itself.
The State relies on Knighten to argue that it met the burden of proof here because the appellant admitted he intentionally set the fan on fire. In so arguing, the ;State seems to suggest that an admission from an 11-year-iold boy, coupled with proof of fire damage in the vicinity, satisfied its burden of proving, the crime of second-degree felony arson. The State’s argument pushes the crime of arson past its logical extension and glosses over proof of the unlawfulness of the appellant’s actions. Lighting a fan on fire that led to the fire spreading to an adjacent structure despite the appellant’s efforts to extinguish the fire is not the same thing as intentionally setting fire' to the structure itself. This distinction is further'underscored by the language in Linehan providing that arson, as a general intent crime, prohibits either a specific voluntary act or- something that is substantially certain to result from the act. It is'clear that the appellant did- not intentionally set fire to the shed. We disagree with the State that it was substantially certain that the shed would burn from the appellant’s intentional act of setting a nearby fan on fire. As opposed to Knighten and Linehan, in which the defendants started the fires inside the *693 same structure that ultimately burned, the fire here was neither in nor touching the shed that ultimately burned. There must be some proximity between the intentional act of setting a fire and the damage caused to render the result substantially certain to occur. Glossing over the substantial certainty would allow virtually any intentional fire that, got out of hand to be reclassified as a crime of arson. We..do not believe that the Legislature intended to cast such a wide net.
-Although a case of purely circumstantial evidence, the Third District in T.E. v. State, 701 So.2d 1237 (Fla. 3d DCA 1997), illustrates this point. T.E., a 12-year-old, was observed by a witness playing around a storage shack. Id. at 1237. The witness observed T.E. go into the shack empty handed and later emerge with a long metal pipe with paper burning at one end.. Id. The witness then noticed the shack was on fire. Id. The Third District found the evidence did not support the State’s argument that it was substantially certain that the shack would catch fire from T.E.’s playing with a lighted torch. Id. at 1238. The Third District also concluded that the circumstantial evidence did not negate the reasonable hypothesis that the fire was accidentally set and reversed. Id. While the instant case involves the appellant’s admission that he set the fan on fire, we do not believe this admission was the beginning and the end of the State’s burden of proof.
The State heavily relies on N.KD. v. State, 799 So.2d 428 (Fla. 1st DCA 2001), in which the facts were summarized as follows:
The evidence in this case reveals that an unoccupied barn was completely destroyed by fire. Appellants, two middle-school girls,-were interviewed concerning the fire. Both initially lied regarding their involvement;- later, however, S.L.F. told the investigator they had skipped school and gone to the bam,-where they lit a fire using hay, which got out of control and began burning one of the sides of the barn. She continued that they tried to put it out and believed ■ they had, and then deft.. N-.KD. said much.the same thing. 1 She related that she and S.L.F. did not break into the . barn for the purpose of burning it, but just for “hanging around.”

Id.

N.K.D. and S.L.F. argued, that the trial court erred in denying their motions for judgment of acquittal because the evidence did not negate their hypothesis of innocence that the burning of'the structure was accidental. Id; at 429. This Court affirmed under Knighten because N.KD. and S.L.F. admitted to intentionally starting the fire and were aware that damage to the barn had already occurred before they left and allegedly extinguished the fire. Id. at 430. While we agree with the State that N.KD. and the instant case both contain an admission,'we nonetheless find N.KD. distinguishable on the facts. As in Knighten and Linehan, the fire in Ñ.KD. was intentionally lit inside the structure itself, leading to a presumption that the intentional action was unlawful. In contrast here, the appellant did not light a fire inside the shed itself, immediately tried to extinguish the fire he did start, and left to seek help before the shed caught on fire. : We agree the appellant’s ultimate intent to dam'age the shed is immaterial, but decline to apply the arson statute in such a way as to render the term “unlawfully” meaningless. In other words, the State proved that the appellant intentionally set a fan on fire and that a shed in the same general area burned. We-believe the State also carried the burden of connecting the two to prove a crime, rather -than an accident, occurred. The connection lies in proof of the unlawfulness of the action, which serves to distinguish *694 the action as criminal act rather than an unforeseen accident, and cannot be presumed here. See Linehan, 442 So.2d at 248.- The State failed to prove that the appellant’s actions were substantially certain to cause the shed to burn down. -Although a general intent crime, the State still carried the burden of proving that the appellant committed a crime, not that-an accident occurred from an 11-year-old’s poor judgment.
REVERSED.
BENTON and KELSEY, JJ., concur.